HODGES TIRE COMPANY, Appellant,

v.

Thelma B. KEMP, Appellee.

No. 16094.

Court of Civil Appeals of Texas.

Fort Worth.

April 1, 1960.

Rehearing Denied April 29, 1960.

**628**

Jones, Parish & Fillmore and Clyde Fillmore, Wichita Falls, for appellant.

Kouri & Banner and Jack G. Banner, Wichita Falls, for appellee.

MASSEY, Chief Justice.

Thelma B. Kemp sued the partnership operating as Hodges Tire Company for damages to her personal property resulting from the spreading of a fire, origin of which was on the defendant's premises. Mrs. Kemp operated a hotel in the same building as the tire concern, and immediately above the same. Based upon a verdict of the jury, judgment was entered for the plaintiff and the defendant appealed.

Judgment reversed and rendered.

In answer to Special Issue No. 1 the jury refused to find that the defendant "kept inflammable liquids in their premises in unsealed containers prior to the fire in question". The state of the record is such that the finding may be treated as an affirmative finding that the defendant did not keep inflammable substances in unsealed containers. Having answered the aforesaid issue against the plaintiff there was no answer returned upon the question of negligence and proximate cause conditionally submitted under the issue.

In answer to Special Issue No. 4 the jury found that the defendant "allowed inflammable substances to accumulate on their premises prior to the fire in question". In answer to Special Issues Nos. 5 and 6 the jury found such to have amounted to negligence and a proximate cause of the fire.

By Special Issues Nos. 7, 8 and 9 the plaintiff's theory of the case under the doctrine of *res ipsa loquitur* was submitted to the jury, and by answers thereto returned

the jury found for the plaintiff and against the defendant. Other issues submitted are immaterial to our consideration here.

█ As a matter of "hindsight" we know that inflammable substances were present in the immediate area where the fire was first observed to be in existence upon defendant's premises. This we know because there would have been no fire had there been no substances of an inflammable character.

█ The only evidence of what such inflammable substances consisted related to "trash" of a character capable of being blown about (no other descriptive testimony having been given) and used and worn-out tire-flaps. The evidence was sufficient to establish the presence thereof in the immediate area where the fire was first observed. There was no evidence concerning the inflammability of either the tire-flaps or the "trash", and we cannot take judicial notice that either substance is inflammable in nature or is generally known to be inflammable. We know that one or both substances (and we may not assume the existence of any third substance under the state of the record) were inflammable, but we know this only as a matter of "hindsight", and because the fire occurred.

█ We could not know the same thing as a matter of "foresight" from the evidence in the record, direct or circumstantial. Even should we presume that the defendant was negligent in permitting the tire-flaps and "trash" to accumulate at or proximate to the point where the fire occurred, defendant would not be liable for damages to persons who sustained injury as the result thereof unless the negligence amounted to a "proximate cause" of such injury. In order for any such negligence to have constituted the "proximate cause" of another's injury, such injury or some like injury must have been such as should have been reasonably anticipated, as a natural and probable consequence, by a person of ordinary care and prudence. We believe

that evidence of such "foreseeability" on the part of the defendant is absent from the record in this case. Being absent, the law would inhibit imposition of liability upon defendant for injuries or damages he could not have reasonably anticipated, even though resulting from an act which could be found to have constituted negligence.

█ Considering the case only as necessary in the test of whether presumed negligence under the doctrine of *res ipsa loquitur* was raised in the evidence, we have reached the conclusion that such never became an issue for the jury. Not having been raised the court erred in submitting the issues thereon to the jury and the answers returned to said issues will be disregarded.

█ Under general rules, the mere occurrence of a fire does not give rise to a presumption of negligence. In order for the fire to be the *thing* or *instrumentality* causing injury, and the injury to be an accident which "in the ordinary course of things does not happen if those who have the management use proper care", it seems to us the fire would have to be designed for some proper purpose, whereupon he who was in control thereof would be obliged to exercise ordinary care to see that the fire was safely confined and not permitted to spread, as to inflammable parts of a building. As to the burning of a building so caused, it would do no violence, in such case, to the language or reasoning of the doctrine of *res ipsa loquitur* to regard the fire as the *thing* causing the injury and from such known cause of the burning of the building it could be established that the accident was such as would not occur if those having the management of the fire used due care. National Hotel Co. v. Motley, Tex.Civ.App., Eastland 1938, 123 S.W. 2d 461, 467, writ dism., judgment correct.

Where the *thing* or *instrumentality* causing the loss or injury through fire, as by way of negligently creating a dangerous situation and "setting the stage", so to speak, for a "calamity" through the agency

of the fire,—it is not the fire which in law would be the "proximate cause" of the injury, but the negligent acts in themselves. Such was the situation in the case of Wichita City Lines, Inc. v. Puckett, 1956, 156 Tex. 456, 295 S.W.2d 894. In that case the facts supporting the submission of special issues under the doctrine of *res ipsa loquitur* were not those bearing upon the mere occurrence of the fire nor to the origin of the fire, but were those which demonstrated the defendant's exposure of gasoline fumes in the operation and conduct of activities of which it was in sole and exclusive control. In the opinion itself (at page 897 of the Southwestern Reporter) is cited the case of National Hotel Co. v. Motley, supra, and other authorities standing for the proposition that the mere occurrence of a fire does not give rise to a presumption of negligence, and the statement is made that such authorities were not applicable to the Puckett case for reasons which were explained. The opinion then proceeds and says that the negligence with respect to permitting the gasoline fumes to escape into a building where they settled near the floor and created a highly dangerous situation was the "proximate cause" of the injuries which resulted, in that it could and should have been foreseen that the fumes were likely to be ignited, and the fact that a soldier deliberately or negligently ignited them by dropping a lighted match or cigarette, or that a spark or flame of unknown origin ignited the fumes, did not break the chain of causation. In like effect is the holding of Texas Co. v. Gibson, Tex.Civ.App., Beaumont 1935, 88 S.W.2d 757, reversed on other grounds at 131 Tex. 598, 116 S.W.2d 686. See also Yarbrough's, Inc. v. McNabb, Tex.Civ.App., Eastland 1949, 222 S.W.2d 274, writ ref. n. r. e., a case where the jury was at liberty to find a defendant liable under the *res ipsa loquitur* doctrine, either on the theory that a fire designed and existent for some purpose was negligently permitted to spread, or on the theory that the defendant had negligently permitted gasoline, or "spray" thereof, to have been loosed upon premises where it "set the stage" for a "calamity" through the agency of fire.

In Texas & Pac. Coal Co. v. Kowsikowsiki, 1910, 103 Tex. 173, 125 S.W. 3, relative to the conclusion of the Court of Civil Appeals that the doctrine of res ipsa loquitur was applicable in view of facts recited from the record, the Supreme Court, after quoting the doctrine, said (125 S.W. at page 4): "This would probably be an eminently just conclusion if the assumption upon which it is founded were just, viz., that the evidence shows that the particular thing which caused the death in question was under the exclusive management and control of the defendant. The derailment of the car unexplained, is a fact which by its very nature may be admitted to suggest something amiss, a want of proper precaution somewhere. *But what was the cause of the derailment? Until we can answer that question, we think it must be admitted that it is not shown by the evidence that the particular thing which caused this injury was in the exclusive management of the defendant.* If everything that could reasonably be assigned as the cause of the derailment had been wholly under the control of servants of defendant other than the deceased himself, it might be inferred that the cause, whatever it was, consisted in some negligent act or omission of theirs. But we have a track, with its switches, and a motor car, defects in, or negligent management of, any of which might have brought about that which happened. The deceased himself had a hand in the management of the switches, and also in controlling the movements of the car, in so far as it depended on the giving of signals. Negligence is not to be imputed either to him or to the defendant's other servants without proof; and a state of facts *in which the cause of the accident cannot be found* does not warrant a conclusion that one, rather than the other, produced it." (Emphases supplied.)

■ We have quoted the above in order to lend emphasis to our conclusion that the

doctrine of *res ipsa loquitur* cannot be applied to the instant case. Although the fire was the *thing* causing the plaintiff's injury, we cannot know from the evidence that the *particular thing* which caused the fire was in the exclusive management of the defendant. Indeed, we do not know from the evidence either the immediate cause of the fire or even that the "stage was set" for the occurrence of any fire. In short, the state of the evidence is such that there is an entire absence of proof that exercise of "foresight" (of a reasonably prudent in the same or similar position) should have enabled defendant to anticipate that any injury might occur. As a matter of "hindsight", in light of the fact that fire actually did occur, we can know that there was a cause of the fire. But this does not constitute proof either that the defendant was negligent, or that its negligence was a proximate cause of the plaintiff's injury.

We next consider the jury findings in Special Issues 4, 5 and 6 that the defendant allowed inflammable substances to accumulate on the premises prior to the fire in question, which was negligence and a "proximate cause" of the fire. The defendant objected to the submission of the initial question on the ground that there was no evidence warranting the propounding of the same to the jury. Defendant objected to the negligence issue on the ground that there was no evidence that there was any negligence in the accumulation of the tires and tubes defendant had "on hand" at the premises, which was the only inflammable substances that defendant had accumulated (exclusive of inflammable liquids which were inquired about in Special Issue No. 1 and answered against plaintiff). Defendant objected to the "proximate cause" issue on the ground that there was no evidence that the accumulation of such substances (which was of course denied) "was the cause of the fire, caused the fire, or had anything to do with the fire" and that in view thereof there was no evidence from which the jury could answer that such was a proximate cause of the fire.

When we note the jury found against the plaintiff on Special Issue No. 1, observing also that there was a complete absence of evidence to the effect that there was any "highly inflammable" substance present anywhere upon the premises other than those inquired about in said issue, and that the limitations of the testimony left the record in such state that the only evidence remaining before the jury which it could consider in arriving at answers to Special Issues Nos. 4, 5 and 6 was that evidence to the effect that within the area where the fire originated and became a damaging blaze, there was an undetermined quantity of "trash" and "old tire-flaps" around "near that door" at the alleyway at the southeast corner of the premises. We have already noted that "trash" was shown to have been such as was capable of having been blown in the door by the wind, but otherwise was not described. The "old tire-flaps" were shown to have been such as keep a wheel rim from coming in contact with the inner tube inside a tire, probably off truck wheels.

■ Whether the "trash" was an inflammable substance was not shown by the evidence and the same was true as to the "flaps". Though we might assume that the "flaps" would burn we certainly could not assume that they were highly inflammable. Though there was some evidence upon the fact of their accumulation, we are of the opinion that there was no evidence permitting a finding that such amounted to negligence, or that it was a proximate cause of the fire and the resulting injury and damage. Where the fact of a condition is no longer a question it would only be where the condition amounts to a defect, and that defect such that a reasonably prudent man would not permit it to continue, because likely to produce hurt, that liability exists. The test, by settled law, is whether the evidence raises an issue of foreseeability of harm as the basis of duty, such element ordinarily embodied in the definition of proximate cause. Seinsheimer v. Burkhart, 1939, 132 Tex. 336, 122 S.W.2d 1063.

In the case of Brownsville Navigation Dist. v. Valley Ice & Fuel Co., Tex.Civ. App., San Antonio 1958, 313 S.W.2d 104, it was sought to hold a plaintiff contributorily negligent upon the jury finding that trash and other inflammable material were permitted to accumulate and remain under plaintiff's pier where the fire occurred, which was negligence and a proximate cause of the fire. The proof failed, among other things, to show whether the trash in question was much or little, how it had accumulated, and how long it had been present. The court held that the findings of the jury upon the question had no support in the evidence. We believe that the findings of the jury in the instant case upon a like question cannot be said to have support in the evidence.

With absence of any support by the issues discussed as above, and the doctrine of *res ipsa loquitur* having no application to the facts of the case, the judgment cannot stand. We will furthermore state that we are of the opinion that the evidence to support Special Issue No. 4 is insufficient, if and in the event the Supreme Court should be of the opinion that we have erred in our holding of "no evidence".

We have been somewhat concerned with the propriety of remanding the cause for another trial, rather than rendering a take nothing judgment in the defendant's behalf, on the theory that the case was not fully developed in respect to the matter inquired about in Special Issues Nos. 4, 5 and 6. Plaintiff must be treated as having been cognizant that they were crucial issues. So far as is made apparent in the record the plaintiff had ample opportunity of submitting proofs appertaining to the matter inquired about in the development of her case, and could not claim to have been justified in the omission of any evidence which might have been available because of any erroneous ruling or decision of the trial court. It affirmatively appears that the theory upon which the trial was conducted was not erroneous in the sense that either counsel or court treated the matter inquired about as other than a material ground upon which plaintiff sought to obtain damages, and the mistaken view of the trial court that a judgment for the plaintiff would find support in the issues on res ipsa loquitur was not such as constituted an excuse for a failure to adduce available testimony upon the matter inquired about by Issues 4, 5 and 6. Our conclusion therefore is that our judgment should be one of rendition rather than of remand. See 4 Tex.Jur.2d, pp. 516–531, inclusive, "Appeal and Error—Civil", Ch. XVIII "Appellate Decision", Sub. G, "Disposition of Case", 4. "Rendition of Judgment; Remand", secs. 911–918, inclusive.

Judgment reversed and rendered.